## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID L. COCHRAN** | : | CIVIL ACTION |
| | : | |
| **Plaintiff,** | : | |
| | : | No. |
| v. | : | |
| | : | Jury Trial Demanded |
| **KEYSTONE STATE PROFESSIONAL** | : | |
| **BASEBALL, LLC, d/b/a** | : | |
| **LANCASTER BARNSTORMERS AND** | : | |
| **OPENING DAY PARTNERS, LLC** | : | |
| **Defendants.** | : | |

### COMPLAINT

### (Age Discrimination – Employment)

### *INTRODUCTION*

1. Plaintiff, David L. Cochran, a former employee of Defendant, Keystone State Professional Baseball, d/b/a Lancaster Barnstormers, brings this action for an award of damages, declaratory and injunctive relief, attorneys' fees and other relief for the harm caused by Defendants' unlawful discriminatory actions.

2. This civil rights employment discrimination action is brought pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U. S. C. §621 *et seq.* in that (a) Plaintiff was unlawfully terminated because of his age in violation of rights secured to him under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*. and (b) Plaintiff was unlawfully terminated because of his age in violation of rights secured to him under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S § 951 *et seq.*

Cochran v. Keystone State Professional Baseball et al.
Federal Complaint
Page 1 of 10

dockets.Justia.com

## JURISDICTION

3. The jurisdiction of this Court over Count I of this controversy is based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331 in that this district court has original jurisdiction of all civil actions arising under the laws of the United States. The federal law to be enforced in Count I is the Age Discrimination in Employment Act of 1967, as amended, ("ADEA"), 29 U.S.C. § 621 *et seq.*

4. The jurisdiction of this Court over Count II of this controversy is based upon supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

## VENUE

5. Venue is appropriate in this Court under 28 U.S.C. § 1391(b) in that Defendants reside in this judicial district and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## PARTIES & PRINCIPLES

6. Plaintiff, DAVID L. COCHRAN ("Cochran") is an adult individual and citizen of Pennsylvania who resides in Lititz, PA.

7. Defendant, KEYSTONE STATE PROFESSIONAL BASEBALL, LLC ("Keystone State"), is, upon information and belief, a corporation duly organized and existing under the laws of the state of Maryland, with a principal place of business at 111 Murphy Lane, Grasonville, Maryland 21638.

8. Defendant, Keystone State Professional Baseball, LLC, does business as LANCASTER BARNSTORMERS in Lancaster, Pennsylvania. Keystone State owns and operates the Lancaster Barnstormers.

9. Defendant OPENING DAY PARTNERS, LLC, upon information and belief, is a corporation duly organized and existing under the laws of the state of Pennsylvania. The principal place of business of Opening Day Partners is 650 North Prince Street, Lancaster PA 17603. Upon information and belief, Opening Day Partners owns the Lancaster Barnstormers.

10. JON DANOS, is the President and Chief Operating Officer of Opening Day Partners. John Danos is an adult individual residing in Lancaster County Pennsylvania. Jon Danos is also President of the Lancaster Barnstormers.

11. BRAD SIMS, was a Senior Vice President for Opening Day Partners at all times relevant herein.

12. At all times relevant herein, the Defendants were acting through its agents, servants and employees, who were acting within the scope of their authority, course of their employment and under the direct control of the Defendants.

13. Defendants are "employers" within the meaning of the ADEA and the PHRA.

*EXHAUSTION OF ADMINISTRATIVE REMEDIES*

14. Plaintiff has exhausted applicable administrative remedies.

15. Plaintiff filed an employment discrimination charge against Defendants on April 2, 2008 with the Equal Employment Opportunity Commission ("EEOC") Case No. 530-2008-02632.

16. Plaintiff's EEOC Charge was dual filed with the Pennsylvania Human Relations Commission on April 2, 2008.

17. The EEOC issued a Right to Sue Notice permitting Plaintiff to file suit on February 2, 2009.

## STATEMENT OF FACTS

18. Plaintiff was born in March 1947 and is sixty-one (61) years of age.

19. Upon information and belief, in about April 2004, after approximately 44 years, minor league baseball returned to Lancaster, PA, through the Lancaster Barnstormers.

20. The Barnstormers first season began in April 2005.

21. Plaintiff started his employment with the Lancaster Barnstormers ("Barnstormers"), on about May 3, 2005.

22. Plaintiff was hired by Joe Pinto, the first General Manager of the Lancaster Barnstormers.

23. Plaintiff was initially hired by Mr. Pinto as a concierge attendant, which was a seasonal position, earning minimum wage.

24. In January 2006, Mr. Pinto offered Plaintiff a permanent, full-time, position with the Barnstormers' Corporate Sales Department.

25. Plaintiff was qualified for his position as a Corporate Sales Associate.

26. As a Corporate Sales Associate, Plaintiff was responsible for obtaining and renewing corporate advertising.

27. At the time, Plaintiff was 58 years-old.

28. The other personnel in the Corporate Sales Department were Vince Bulik, Joe Pinto, Peter Tsirigotis, and Jeff Bertoni.

29. Defendants' other employees in the Corporate Sales Department were significantly younger that Plaintiff. Vince Bulik, born in August 1966, was 40 years-old. Joe Pinto, born in December 1963, was 43 years-old. Jeff Bertoni, born in January 1968, was 38 years-old. Peter Tsirigotis, born in February 1972, was 34 years-old.

30. Plaintiff was the only new member of the Corporate Sales Department in 2006.

31. Vince Bulik, Joe Pinto, Peter Tsirigotis, Jeff Bertoni, and Andy Shultz, all hired in 2004, were in corporate sales at the beginning of the Barnstormers' inaugural season.

32. Plaintiff received only six customers from the book of business of his predecessor in Corporate Sales, Andy Shultz.

33. Plaintiff started in Corporate Sales with only three months to make sales before the start of the season.

34. Upon information and belief, the bulk of Corporate Sales occurs during the period immediately after the season, from October through January.

35. The Barnstormers credit corporate sales to the sales person on a multi-year basis, so that a multi-year contract sold in 2005 will also be counted in actual sales in 2006 and 2007.

36. In making corporate sales, the Barnstormers' salespersons operated on a "claim a client" basis.

37. When a Barnstormers Corporate Salesperson made a first-contact with a company or contact, that Salesperson could "claim" the "client" as that person's exclusive client. Other Salesperson's were not allowed to solicit clients from other

salespersons and the Barnstormers kept track of these claimed clients through a system that could be checked by personnel.

38. When Plaintiff joined the Corporate Sales Department in February 2006, Plaintiff was joining the Department after 5 months of the sales season was already over.

39. Plaintiff performed his job well in Corporate Sales.

40. Plaintiff renewed all of the contracts he inherited from Andy Shultz, with the exception of one.

41. The one contract Plaintiff did not renew would not likely have been renewed by any other salesperson because of the client's circumstances.

42. Upon information and belief, Plaintiff may have made more new sales in 2006 than any other Corporate Sales Associate.

43. In about December 2006, Joe Pinto left the Barnstormers. Kevin Cummings took over as the General Manager.

44. After Pinto left, Defendant began to take adverse actions against Plaintiff relative to his employment.

45. In February 2007, Plaintiff was moved from his position in Corporate Sales to a position in the Customer Service Department.

46. Plaintiff did not seek to be removed to a new department.

47. At this time, Defendant never advised Plaintiff in any way that Plaintiff's job performance was not satisfactory in Corporate Sales.

48. Plaintiff was replaced in Corporate Sales by a substantially younger new hire, Kristy Lovelace.

49. Brad Sims hired Kristy Lovelace.

50. When Plaintiff was moved to Customer Service in February 2007, the other salespersons in that department were Kaye Willis and Lindsay Minnich.

51. At that time, Kay Willis, born October 1955, was 52 years-old. Lindsay Minnich, born June 1984, was 23 years-old.

52. Despite being the newest member of Customer Service, Plaintiff had the highest sales goal.

53. Plaintiff's sales performance in 2007 qualified him to receive a bonus.

54. Plaintiff performed well as a Customer Service salesperson.

55. On October 16, 2007, in a meeting with Kevin Cummings and Brad Sims, Plaintiff was dismissed from his position.

56. Cummings and Sims informed Plaintiff that his job was over as of October 25, 2007.

57. Defendants' never advised Plaintiff of any problems with his work performance.

58. Rather, Cummings told Plaintiff that the Barnstormers wanted to go in a "different direction."

59. Cummings discussed a newly created position for Plaintiff, titled "Barnstormers Ambassador of Baseball." This position involved a significant cut in pay and was only part-time.

60. Cummings told Plaintiff that he could "do the jobs no one else wants to do."

61. At the time of Plaintiff's termination he was sixty (60) years old.

62. Upon information and belief, Plaintiff was replaced by a significantly younger female.

63. Upon information and belief, Plaintiff's replacement was also significantly inexperienced in sales in comparison to Plaintiff.

64. During his employment with the Barnstormers, Plaintiff regularly received favorable comments from customers about his work.

65. During his employment with the Barnstormers, Plaintiff did not have any written or oral discipline.

66. Defendant advised Plaintiff not to worry about getting help with some computer-related tasks.

67. Defendants' Supervisors, all significantly younger that Plaintiff, would make age-related comments to Plaintiff.

68. Vince Bulik, the Barnstormers' Assistant General Manager, referred to Plaintiff as "old man."

69. Kay Willis, another supervisor, told Plaintiff, "Dave you're too old to do that."

70. But for Defendants' discriminatory actions, Plaintiff would have worked for the Barnstormers until at least age 70.

71. Defendants' discriminatory actions were willful.

## STATEMENT OF CLAIMS
### COUNT I – Violation of the Age Discrimination in Employment Act (ADEA)

72. Paragraphs 1 – 70 are incorporated herein by reference as if set forth in their entirety.

73. Defendants' unlawful and discriminatory termination of Plaintiff employment because of Plaintiff's age and status as an older worker violates the provisions of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §621 *et seq.,* justifying an award, *inter alia*, of backpay, front pay, benefits and compensatory damages against the Defendants.

74. Defendants' unlawful and discriminatory termination of Plaintiff's employment on account of Plaintiff's age and status as an older worker was a willful violation of the ADEA, justifying an award of liquidated damages under the ADEA.

*COUNT II – Violation of the Pennsylvania Human Relations Act (PHRA)*

75. Paragraphs 1 – 73 are incorporated herein by reference as if set forth in their entirety.

76. Defendants' unlawful and discriminatory termination of Plaintiff's employment on account of Plaintiff's age and status as an older worker violates the provisions of the Pennsylvania Human Relations Act as amended, 43 P.S § 951 *et seq.*, justifying an award, *inter alia*, of backpay, front pay, benefits and compensatory damages against the Defendants.

*JURY DEMAND*

77. Plaintiff herein demands a trial by jury of all issues in this action.

*PRAYER FOR RELIEF*

WHEREFORE, Plaintiff respectfully prays for judgment against the Defendants as follows:

a. For a declaratory judgment that Defendants' actions complained of herein violate the ADEA and the PHRA;

b. For a money judgment including monetary damages exceeding $150,000 representing compensatory damages and all compensation and monetary loses, which Plaintiff has been denied, including backpay, front pay and all other sums of money, including retirement benefits, other employment benefits, and liquidated damages;

c. For pre and post judgment interest;

d. For reasonable attorneys' fees, expert witness fees, costs and all other relief permitted by the ADEA, or other applicable law; and

e. For such other relief as the Court deems just and appropriate.

*s/Andrea C. Farney*
_____
Andrea C. Farney, Esq.
PAB# 204317
TRIQUETRA LAW
The Offices at Marion Court
35 East Orange Street, Ste 301
Lancaster, PA 17602
Tel: 717-299-6300
Fax: 717-299-6338
Farney@TriquetraLaw.com

Dated: March 13, 2009　　　　Attorney for Plaintiff David L. Cochran